This is 25-5065 and whenever you're ready, Mr. Casey, we'll hear from you. Good morning. May it please the court. My name is Andrew Casey. I'm here on behalf of the appellant, Preston Campbell. Shortly, Preston Campbell was charged with assault on a federal officer and convicted also of using a dangerous or deadly weapon. He was sentenced to 130 months. Some of the facts of this are rather simple because they were captured on a body cam. But the issue that I want to do, that I want to talk about without abandoning the other issues is issue one, which I think will take up some time. The ruling in that effectively held that if he were to testify in his own defense at trial, that the district court said that the government would be allowed to use impeachment of prior felony convictions, one from a felon in possession of a firearm from 2021, two, a second degree robbery from 2010, a burglary second degree from 2010, another second degree robbery from 2010, and larceny of an automobile from 2010, which would have been five felony convictions that would have been used for impeachment under Rule 609A1, which is a fact that I believe all the parties agree on. I have three arguments. The first, I think, is important as the standard review, whether or not it's abuse of a discretion instead of plain error. And then I'll move on to whether the district court erred in the application of the smalls factors under 609A1, and then I will make arguments about how this substantially affected his rights. But don't you have even a bigger argument, which I think was underemphasized in the briefing, the loose case, Supreme Court case that says a ruling on a motion in limine cannot be challenged, cannot be preserved unless you proceed to the trial and have the evidence come in and get the impeachment. So it is non-ripe to raise an issue according to loose of a limiting ruling until you actually try to face the problem. And here, they never called the defendant, he never testified. So I just wonder if under loose, either the issue wasn't preserved or it's not ripe, and therefore, it was forfeited, we'll have to figure out what the language might be, but among those things, how do you cope with loose? The appellee, the government cited this under the U.S. v. Comanche decision at 1270. I think my response to that question will come in the citations outlined for that. So in that particular part, the Tenth Circuit has held, and our case law is very specifically defined under Mejia al-Arqan, which is 995 Fed 2nd 982 at 986, which is cited in the Comanche decision. And it notes a couple of different things. First is that a motion in limine, as was prepared here, can preserve an issue when, one, it's fairly presented to the district court, and I think in many ways, there's not a contest that this issue was fairly presented to the district court, both in terms of a pretrial hearing as well as then additional supplemental briefing. Two, whether this is the type of issue that can be finally decided in a pretrial hearing, which I'll get to in a second. And three, whether this is ruled upon without equivocation by the trial judge. And there's some language from Mejia al-Arqan that I think matters here, which is when there's a supporting motion in limine, and it fully apprises the trial judge of an issue in the evidentiary hearing, application of a rule requiring parties to re-raise objections at trial makes little sense. And that's Mejia al-Arqan quoting the sides case at 944 Fed 2nd 1560. Could you just answer whether that Mejia case, and I'm familiar with that and that practice too, in fact, but did that case come before or after the loose Supreme Court case? I believe it would have come before. So loose would have changed the law if it is inconsistent with that. I'm troubled about it because what you've just said is a very common practice. When I sit as a trial judge, I often do exactly what you've said. And yet, I was intrigued about this loose language. It seems to say that, in fact, unequivocally, it is not preserved, it is not raised unless you call the witness and bear the pain. Well, I think in this particular case that the issue of whether or not then it affects a substantial right, which would then be plain error analysis, is something we can still consider whether or not it was waived, not forfeited in that respect. But I would also note that I don't believe that that contemplates a change of the law. I think it can be consistent with the previous opinions of this court. When we look at the way that it was litigated below and then the nature of it in this case, because in this case, the question became, does he testify and risk the exposure of effectively five criminal convictions, or does he take his shot without testifying in this manner? And is he required to take his shot in order to preserve the issue? There's something inherently seems unfair about that. You know, you've got to agree to go to the firing squad before you can complain, because until they actually pull the triggers, it's all abstract. So I'm not unsympathetic with the argument, but I'm struck by the unequivocal language of the U.S. Supreme Court in Luce and struck by the failure of the parties, I believe, to really address that language. And so it's that one particular case that you said comes after the Tenth Circuit cases you're relying on and therefore would change those Tenth Circuit cases. I'm really intrigued. I would have liked in the briefs for you to address and I'd like you to address why we are not bound by Luce. Not that I necessarily, I don't even agree with it as a matter of policy, but why am I not bound by it? I hate saying this next part. I will attempt, if the court allows, a 28J to add one particular part related to it, but I'll do my best to answer it now, given that particular aspect, which is just to say that one of the things that the case law has supported is whether or not we focus on preserving objections as formal exceptions under the modern policy rules, which is another portion of that Mahia Alarcon decision, whether or not we're actually asking a court to reconsider something or whether they've made a definitive, well-thought-out pre-trial ruling on a subject that will not be affected by the evidence that comes in at trial. And I think that there's some parts of that as far as just the underlying aspect that can be consistent because in that decision it says, requiring the renewal of objections after a definitive ruling may be a needless provocation to the trial judge, not to mention a distracting interruption during the trial, which I think is something that can be... I don't quarrel with that language in Mahia Alarcon at all. It's the way that I've always believed the practice proceeds. But this Luce case, I feel there must be something about that case I am missing because it was, I'm not sure it was even addressed by the parties, but if it was, it was only minimally addressed, and yet it was a Supreme Court case and the language in that is fairly unequivocal. And so I'm just troubled about that. Not that I'm trying to advocate it, but I'd like somebody, I'd like you, because you're the one that's most interested to explain to us why we are not bound by the fairly unequivocal language in Luce. You must have thought it was not relevant because you didn't emphasize it in your briefs. Why? This is true because it was based upon the 609 decisions, 609A1, being heavily referenced inside things like the United States v. Comanche decision, a 2009 case that covered 609A1 even under a plain error standard, which I think is maybe an additional pivot that I have at this moment is to say that under the plain error standard, we could still hold and still find that there's well-settled law and that the decision was contrary to it and that it significantly affected the rights. And I'd love the plain error argument, but there we say again that if you didn't make the case in your brief under a plain error standard of review, that's waived. But, of course, that waiver could be waived if the federal government doesn't assert the waiver, which they didn't. So I just want to get to the merits, but I've got all these procedural problems that I'd like to have a roadmap on how to get through them. Your Honor, the best that I can request is a Rule 28 briefing on it, which I'm sure you know about. Well, there is no such thing as a Rule 28 briefing after oral argument. There is a 28J letter for supplemental authority, and so if you do after the argument want to submit any additional cites, I'm not inviting argument in a 28J letter. You may do so promptly. Which I think would be the best thing that I could offer right now. All right. That's fine. Thank you. Let's move on. Well, I do want to follow up with Judge Rivelos. So your answer. So as I understand it, your reading of Comanche and Mejia, the third requirement is there has to be a definitive ruling, right? Yes. And if there is a definitive ruling, you point out, you're going to tell us why in your 28J letter you don't have to make an exception because the court has already ruled definitively, right? Yes, Your Honor. Now, let me ask you to apply that to what Judge Frizzell said. Quote, finally, the court notes that the Tenth Circuit has recognized that in most cases the admissibility of 609A1 evidence cannot be finally decided in a pretrial hearing. As I quote, 609A1 ruling necessarily requires the district court to balance the prejudicial effect and probative value of the disputed evidence, a task that can only be performed by reference to the other contextual evidence presented at trial. End quote, Comanche. Thus, this ruling remains subject to the evidence presented at trial. How do you fit that language from Judge Frizzell into the third requirement of Mejia, that it was a definitive ruling? One of the parts of the third requirement of Mejia whenever it's citing and discovering that third requirement is it's relating to conditional decisions or ones where there's a suggestion of reconsideration, which clearly in the sentence from the order that you wrote, he has indicated there may be facts that come out and change. The one thing that I want to press about this case that I think is important from the way that Judge Frizzell is looking at it at the time he makes those rulings is, one, that we had had a significant amount of argument before him about different evidence and what we intended to come in, but that we also already knew, and he already knew, about the body cam and the way that that would come in, what that looked like, because Judge Frizzell also was attending over Mr. Campbell's revocations under supervised release because both of those were Frizzell warrants that he ultimately got revoked on and Judge Frizzell was aware of. So that's one of the things where I think in this case Judge Frizzell had a very good grasp of the facts whenever he was looking at it. So your argument is that he didn't make a definitive ruling, but he should have? No, actually, the conditional part would have been something that happened where he just was not apprised of the facts that were going on. The facts, as alleged, that were there were almost entirely what I imagine Judge Frizzell was thinking about and as they've been decided. Nothing at trial changed materially in any way that would have caused a reconciliation or a reconsideration of that, which I think is different than the Mahia Alarcon cases that are discussing whether or not this is truly a conditional ruling or that he's suggesting that it can be reconsidered. The language of it, the thoughtfulness of Judge Frizzell's opinion, the fact that we had had a pretrial ruling where he had admitted one of the convictions and then a supplemental written ruling where we had four others added to it and even one aggravated assault and battery that he excluded suggests to say that this was not something he was inviting reconsideration to. It was more that that's the way that it's framed under motions in limine generally for him. But there's nothing different about the facts of this case that came through. Well, you don't know that because the facts were never presented. Any of the facts that might have been weighed in your favor, your client didn't testify. He didn't try to get an excuse for the fact that there were these other convictions. He could have said to the jury, well, he pled to these, but he's not pleading to this one. And so you're just guessing on what would have happened. To some extent, it's an incredibly educated guess based on the limitations that are available in the evidence. The body camera recording, I think this is important for several of the factors, is one that is very clear. And whenever you are in the position of Judge Frizzell or the defendant... Are you saying it's so clear that he was guilty that they shouldn't even have been in trial? No, it's so clear in the sense of, you know, you can... And I'm assuming, for instance, let's assume that the fact is that he would not have said, this was not a knife, this was something to pick my teeth with. So assuming that it is a knife, the only question that would have been answered by the defendant in that moment is, were you trying to use a dangerous weapon or not, which would have bared to the concept of that credibility, which is not something that is foreign to what Judge Frizzell was thinking about in that decision, nor is it something that he wouldn't have been aware of. Well, you don't know what the judge was thinking. He said he was going to wait and see what the situation, how it developed. You're assuming that he would not have changed his mind. I think in this case... That's fair. I would just say that this is not a case where we were inviting, you know, five different days of testimony. There was going to be one or two live witnesses and a body cam. I mean, this was a case that was tried in a day, if that makes sense. I mean, these were incredibly unsophisticated sets of facts that Judge Frizzell was looking at in that part. I'm over time, but I'm happy to answer additional questions. Well, I just want to just state one statement from Luce. You've really got two problems. The order itself seems to be conditional, not definitive. And then the language in Luce, I just wanted to read one sentence. Luce says, to raise and preserve a claim of improper impeachment with a prior conviction, a defendant must testify. That's on page 43 of Luce's case. All right, thank you. Thank you, Your Honors. It's a pleasure to be here with you all. Thank you. Thank you. May it please the Court, Elliot Anderson for the United States. First, I would like to clarify, the government did assert in its briefing that Mr. Campbell waived his request for plenary review by not raising it in his opening brief. That is on page 11 of our response at footnote 2. Secondly, I will tell you that I am not familiar with the Luce case, and I apologize, but I am happy to address that in a 20HA context if it becomes necessary. But third, Comanche, which is what the district court cited to, does not say that the defendant must testify in order to review, in order to renew a 609A1 objection. It just said the court has to wait on other contextual evidence. And by the time Mr. Campbell chose not to testify at the midday break in that trial, other contextual evidence had come in. The jury and the judge had seen the body cam video and images of the knife, which were not before the court at the pretrial hearing. They had heard Deputy O'Connor testify in detail about the nature of the weapon and his observations on it. They also, the court heard from Mr. Casey. Mr. Casey clarified at that midday break when the jury was out that they are no longer going to argue that Mr. Campbell didn't know he was running from U.S. Marshals by the time he ran away. So at that moment, Mr. Casey was able to address the contextual evidence, give some flavor of what his client would or would not argue going forward, and ask the court to reconsider the explicitly preliminary ruling on the admission of his prior convictions. Let me ask you a question. So what I was reading from was on the larceny and the robbery and burglary convictions. Didn't Judge Frizzell definitively rule previous to that on the 922G1A, the prior felony, felon in possession of a firearm conviction? I don't remember Judge Frizzell leaving any wiggle room on that ruling. Do you? A moment here. Your Honor, I think the first ruling on the felon in possession was not reduced to a written order. The second one addressed the final four. The written order did not, my recollection is it didn't say anything about the felon in possession of a firearm. It does actually. In the final last paragraph on page eight of that order, the district court says, based on the foregoing reasoning, the government may impeach Mr. Campbell with the robbery, robbery, burglary, and larceny convictions, as well as the felon in possession of a firearm conviction. And then in the next paragraph, he cites Comanche and says, of course, I can't make a final ruling now. We have to see what the context looks like at trial. So Mr. Campbell had an opportunity at trial, within the developed context, to re-urge his objection, as Campbell and Mejia says that he must, and ask the court to reconsider, based on the anticipated testimony from the defendant and the contextual evidence that had come in, without taking this, and he failed to do so. It's a little bit of a cramped reading of that order, isn't it? I mean, the whole, the rest of the order is dealing with the robbery, larceny, and burglary convictions. It's not the felon in possession of a firearm. And so when he says in the second to the last paragraph that, you know, you can bring these in, in addition to my prior adjudication that the felon in possession of a firearm conviction is admissible under Rule 609A, that, you know, that makes sense. He had already ruled that. But, you know, I suppose there's a plausible reading. It's not necessary to read it that way, because by operation of law under Comanche, the district court could not have definitively resolved the 609A1 objection or remotion at pretrial, whether he said so or not. But here the defendant was on notice that at least with the final four, and arguably all five, that there wasn't a final ruling in it. But even if the error were preserved, or even if he had requested plain error review, and this court chose to exercise it, or even if the court decided to look at it anyway, it was not an abuse of discretion for the court to rule that these were admissible. The court conducted a proper smalls analysis. It looked at the nature of the prior convictions. This court's ruling in Groves is on all fours with this case. In Groves, the court looked at a prior assault conviction. Groves was a battery case. The court said the assault conviction is too similar. It's out. The district court here did the same thing. Preston Campbell had a conviction for felony assault while he was in prison. Judge Frizzell said this is too similar to the assault charge here. It's out. In Groves, the Tenth Circuit said, but burglary and robbery aren't similar to the assault charge here and do have some relevance to credibility, so those are properly in, which is the same ruling that Frizzell indicated he would likely make at trial. I will point out that when we tried the case, and I was on the trial team, we had a visiting judge, so it was not Judge Frizzell. It was a different judge there, but that judge took in the evidence and was aware of the nature of Judge Frizzell's prior rulings. But the nature of the crimes, the robbery, robbery, burglary, larceny, and felony possession under this court's precedence all have some potential relevance. The passage of time had not changed the nature of Mr. Campbell's character. As the district court noted, he had not improved over time. He had been in and out of prison repeatedly since then. The crimes were not too similar to the charge defense. And then the final two issues, the centrality of the witness's testimony and the importance of his credibility, that was key in this case because there was no real dispute about what happened. The marshals approached the car. They gave clear commands. Most people obeyed them. Preston Campbell exploded out of the car, assaulted Deputy O'Connor with a knife in his hand, and ran. The only real question was, what was his intent? And defense counsel emphasized that at trial. In opening, in cross-examination, and in closing, over and over again, the argument that Preston Campbell didn't mean to assault Deputy O'Connor with a knife. If he had testified, his credibility on that point would have been central to the case. So the ruling in advance of trial was not an abuse of discretion, and then it was not revisited at trial. But even if Preston Campbell had decided to testify, those offenses still would have been admissible. That's the reason 609 exists. Beyond that, Your Honor, there was ample evidence to support the jury's conviction. There was no ambiguity that this was a knife. Deputy O'Connor described the knife in detail over, I think, 12 pages of testimony in the transcript. He said, look, there's the blade, there's the shiny edge, there's the point, there's the handle, there's the lock. This is a buck knife. I'm familiar with this kind of knife. A knife this size because it's easy to conceal. Deputy O'Connor testified that the motion Preston Campbell used, swinging his arm from low to high as he came out of the vehicle, was, quote, a classic stabbing motion. Deputy O'Connor was wearing his uniform in court that day. The record reflects that. He was in his bulletproof vest with all of his gear, and he explained that the knife was proximate to the unprotected portion of his body, the side of his torso where he does not have armor plating, and his neck. And he explained that, yes, it's a small knife, and it's not completely out of the hand, but one or two inches of blade would be all it took to give him a life-threatening injury if he'd connected on that side of the body. So the jury saw the video. They saw the images of the knife, which are in the record. They heard the testimony, and a rational jury could have convicted. Now, defense did argue that maybe he was using the knife for some other reason. Maybe he was sitting in the back of the car using the knife to cut up a delicious snack, for example. A rational juror was not required to accept that interpretation. The prosecution's closing arguments about how the other people on the scene responded were in direct response to Mr. Campbell's insinuation that the situation was ambiguous and that he maybe didn't understand what was going on. Mr. Campbell had requested a self-defense instruction. The trial court said on the first day of trial he was inclined to give one. Mr. Campbell's attorney emphasized on cross-examination that some facts of the situation may not have been clear. The marshals were in an unmarked car. They never identified as marshals. They never said, Preston Campbell, you are under arrest. The self-defense instruction and the Tenth Circuit pattern instruction on Section 111 both have provisions for a defense that a defendant is not guilty of assault if he thinks he's under attack, under a hostile attack and has to defend himself. So in response to that, that allegation of ambiguity, the government properly demonstrated to the jury that this was not ambiguous. Other people on the scene understood what was happening and followed commands. Preston Campbell made a deliberate intentional decision to disobey those commands, assault an officer and flee. And then finally, in his flight, had the presence of mind and the awareness of his situation to jump over a barbed wire fence that was not obvious, that two other individuals, an officer and a canine unit, stumbled over. That also was not inappropriate because there was no suggestion that Mr. Campbell was at fault for that. In fact, on cross-examination, Deputy O'Connor said quite plainly, that was just an accident. No one blames him for that. It was just something he saw and we didn't. So on the whole, there was ample evidence to support the conviction. There was no error, plain or otherwise, to warrant reversal. If the court has no further questions, I would ask you to affirm. Thank you. Thank you. Kevin. All right. Thank you very much, counsel. This matter is submitted, well presented in your briefs and in your arguments today. Thank you both.